PEETZ BROTHERS LIVERY AND UNDERTAKING COMPANY, Appellant, v. HENRY VAHLKAMP and JOHN F. DICKMANN REAL ESTATE COMPANY.—11 S. W. (2d) 26.

Division One, November 16, 1928.

*Luke E. Hart* and *Richard C. Hart* for appellant.

*McDonald & Just* for respondent Henry Vahlkamp.

*George P. Burleigh* for respondent Joseph F. Dickmann Real Estate Company.

. GENTRY, J.—This is an action for damages based upon an alleged contract with plaintiff to sell certain real estate in the city of St. Louis to it for twenty thousand dollars, which it is alleged defendants afterwards sold to another party; in other words, a breach of contract.

The petition alleged that the plaintiff is a business corporation engaged in the undertaking business in said city; that the defendant, Joseph F. Dickmann Real Estate Company, Inc. (hereinafter called the real estate company), is a corporation engaged in the real estate business in said city, and that the defendant Henry Vahlkamp

was the owner of a brick residence in said city, situated at 3545 Lafayette Avenue. That on February 10, 1921, defendants entered into an agreement with plaintiff in writing, whereby they agreed to sell said real estate to plaintiff, and plaintiff agreed to buy the same for the sum of twenty thousand dollars, said contract to be complied with on or before March 10, 1921. It was further stated in the petition that the terms of the contract were five thousand dollars to be paid in cash, and the balance payable two thousand dollars in one year, two thousand dollars in two years, two thousand dollars in three years, two thousand dollars in four years and seven thousand dollars in five years, with 'interest at six per cent, deferred payments to be secured by a first deed of trust. That at the time of the execution of said contract the defendants accepted from plaintiff as earnest money and part payment of the purchase price for said property the sum of five hundred dollars. Plaintiff then alleged that it was ready and willing to fulfill and consummate the agreement in all respects, but that the defendants on the 25th of February, 1921, conveyed said property to one Frank L. Root and Laura Root, his wife. By reason of the breach of said contract, plaintiff prayed judgment in the sum of ten thousand dollars, together with said payment of five hundred dollars.

Defendants filed a joint answer, which consisted, first, of a general denial; second, a plea of the Statute of Frauds, alleging that the agreement was not binding upon defendant Vahlkamp as he had not authorized defendant real estate company in writing to execute the alleged agreement; third, that the alleged agreement to sell was subject to the approval of defendant Vahlkamp, the owner of the property, that he did not approve of said agreement, but on the contrary disapproved of the same; and, fourth, that defendants tendered five hundred dollars to plaintiff before the institution of this suit.

A trial before a jury resulted in a verdict in favor of the defendant Vahlkamp, but judgment in favor of the plaintiff and against the real estate company in the sum of twenty-five hundred dollars. Within the proper time, motion for a new trial was filed by the real estate company, and sustained by the court on the ground that the verdict was against the weight of the evidence and that the court erred in refusing to sustain a demurrer to the evidence offered by defendant real estate company. Plaintiff moved for a new trial as to defendant Vahlkamp, but his motion was overruled. From these orders and judgments plaintiff has appealed.

Frederick Peetz and Joseph Peetz testified in substance that they were engaged in the undertaking business in St. Louis and desired to purchase a new location; that Barney Dickmann, an officer of the real estate company, showed them the residence occupied by defendant Vahlkamp; that they inspected the property carefully and were

told that the price was twenty-two thousand five hundred dollars. They then offered Dickmann twenty thousand dollars, and he said he would submit the offer to defendant Vahlkamp. A paper was then prepared, which is entitled "receipt for earnest money," and it was signed by defendant real estate company and plaintiff, but not signed by defendant Dickmann. The paper is as follows:

RECEIPT FOR EARNEST MONEY.

St. Louis, Mo., February 10th, 1921.

Received of Peetz Bros. Livery and Undertaking Company the sum of five hundred (500) and no/100 dollars, as earnest money and part purchase money for a certain parcel of —— improved property, lying in the city of St. Louis, State of Missouri, in City Block No. 1289 and having a front of 120 feet on the north side of Lafayette Avenue by a depth of 130 feet, more or less to an alley, together with all improvements thereon and known as 3545 Lafayette Avenue, screens, shades and lighting fixtures included in sale, which property is this day sold to Peetz Bros. Livery and Undertaking Co., for the total sum of twenty thousand (20,000) and no/100 dollars payable as follows: Five thousand (5,000) and no/100 dollars cash, and balance of $15,000 payable as follows: $2,000 due in 1 year, $2,000 due in 2 years, $2,000 due in 3 years, $2,000 due in 4 years and $7,000 due in 5 years, with interest on the deferred payments at the rate of 6 per cent, payable semi-annually; said deferred payments to be secured by first deed of trust on said premises. The title to said property to be perfect, and to be conveyed by warranty deed, free from liens and encumbrances, except the taxes for the year 1921 and thereafter and which the undersigned purchaser assumes and agrees to pay; also subject to restrictions recorded and it is understood and agreed that unless this property can be used for an undertaking establishment this contract is to be null and void. Possession to be given on or before May 1st, 1921. Water license, taxes and insurance to be adjusted to date of transfer of property.

If upon examination the title be found imperfect, and cannot be perfected within a reasonable time, said purchaser is to be paid a reasonable cost of examining the title, and the earnest money is to be refunded.

This sale under this contract to be closed on or before March 10th, 1921, at the office of Jos. F. Dickmann R. E. Co., and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the above mentioned earnest money is to be forfeited, but such forfeiture shall not release said purchaser herein from any liability for the fulfillment of this contract of sale, or the payments of money herein mentioned, if said seller shall elect to enforce fulfillment of the same.

This sale under above terms and conditions is made subject to the approval of the owner of this property.

> JOS. F. DICKMANN REAL ESTATE Co.,
> By Barney Dickmann (seal)
> Agent.

Accepted on above terms and condi-  Accepted on above terms and
tions.          conditions.

PEETZ BROS. L. & U. Co. (seal) ———————————(seal)
  F. W. Peetz, Pres. (seal) ———————————(seal)
   Purchaser       Owner

——— hereby approve the above contract dated ———, and agree to pay ——— per cent commission thereon.

A few days later Dickmann told Messrs. Peetz that they could have the place at that price, but would have to increase the initial payment from five thousand dollars to seven thousand five hundred dollars; that defendant Vahlkamp would not sell on any other terms. A few days later, Dickmann told them that another party wanted to buy the place and that they would have to take the place now instead of waiting. Peetz claimed to have an option, but Dickmann insisted that he had no option. Something was said in this conversation about the zoning law in St. Louis, which is immaterial now. Peetz brothers were positive that Dickmann said that defendant Vahlkamp would sell them the property if the initial payment was increased to seven thousand five hundred dollars, to which Peetz brothers agreed. In a short time, as above stated, the property was sold by defendant Vahlkamp to Frank L. Root and wife for more than twenty thousand dollars. There was evidence from a real estate dealer that this property was worth from thirty to thirty-five thousand dollars. Plaintiff also offered in evidence the written authority of defendant Vahlkamp given to the real estate company which is as follows:

"I hereby appoint Jos. F. Dickmann Real Estate Co., Inc., exclusive agent to sell the following described Real Estate, situated in the City of St. Louis, Mo., on terms and conditions hereinafter named; Street 3545 Lafayette Ave., Side North.
Between what streets ——————————————— The ———————— Line being ——— feet ——— inches ——— of ——— Street-Avenue, Size of Lot 120x130 to —— Lot No. —— City Block Plat Book page ———; Kind of Street asphalt; kind of alley br.; kind of sidewalk *gr.;* Sewer y; gas and electric y; water y; How heated hot water; garage yes; floors are hardwood; is cellar granitoid y; Roof is slate; width of walls 13″; fruit cellar yes; sink is slate; Tile bath yes; sleeping porch —— property restricted to ——————. Price, $22,500.00 Rental, owner; Terms ———————

————. Deed of Trust, Clear (a) ——% due —— Any leases ————; screens, shades and lighting fixtures on premises included in sale except ————; improvements consist of 3 story brick residence—6 rooms & reception hall 1st floor, 6 rooms & bath on 2nd floor, 3 rooms & storage rooms 3rd floor.

"In consideration of Jos. F. Dickmann Real Estate Co., Inc., advertising above property, and its efforts to sell the same, if a sale or exchange of said property is made while in charge of said Jos. F. Dickmann Real Estate Co., Inc., or by any other company or individual, I agree to pay for its services a commission on above price, or such other price, terms or conditions as I may accept, as per schedule of commissions adopted by the St. Louis Real Estate Exchange, effective February 7, 1917, as follows:

"4 per cent on sales of $3000 or under; $3000 to $15,000 charge 4 per cent for the first $3000 and 3 per cent on excess up to and including $15,000; over $15,000 charge 4 per cent on the first $3000, 3 per cent on excess up to and including $15,000, and 2½ per cent on excess over $15,000. 5 per cent on county and suburban property. Minimum charge on any sale $50, and agent may charge for services rendered in remedying a defective title.

"My title is perfect, and, in event of sale, general warranty deed will be given.

"Taxes, interest, rents, insurance and water license shall be adjusted and prorated to date of transfer of property.

"Possession of all shall be given by arrangement after earnest money or first payment is made on property.

"This exclusive agency and authority to sell shall run for a term of six months from December 1st, 1920 to June 1st, 1921.

"It is further agreed that if no sale be made, I am to be at no expense whatever.

"Signed this 1st day of December A. D. 1920.

"Shall sale board be put up ——————

HENRY VAHLKAMP

   Owner's signature

"Accepted by

Jos. F. DICKMANN R. E. Co., Inc.,        Address ——————

"No.— By BARNEY DICKMAN            Bell Phone    Kinloch.

"Witness ——————————————"

The defendant's evidence tended to show that Bernard Dickmann, an officer of the real estate company, met Peetz Brothers and told them that he had the Vahlkamp property listed for sale and took them to see it, telling them that the price was twenty-two thousand five hundred dollars. As Peetz Brothers would not pay that much, it was finally agreed that Dickmann should take an offer from

them to defendant Vahlkamp for twenty thousand dollars. The earnest money receipt for five hundred dollars was executed and Dickmann took the offer to defendant Vahlkamp, who declined to approve the same with the clause pertaining to an undertaking establishment. He also declined to approve of it unless the initial payment was raised to seven thousand five hundred dollars. Dickmann reported to Peetz brothers the terms of defendant Vahlkamp and they agreed to raise the initial payment as suggested, but would not agree to buy the property unless they could use it in connection with their undertaking business. There was some further talk between them regarding the zoning law. In a few days Dickmann met Peetz brothers and insisted that the deal be closed as another party wanted to buy, but Peetz brothers insisted they had an option for thirty days. Before the thirty days had expired, defendant Vahlkamp sold the property to Root and wife. Defendant Vahlkamp admitted placing the property with the real estate company for sale and executing the agent's contract above shown. He admitted that Dickmann came to see him with the so-called receipt for money, but said he declined to approve of the sale for the reason that the undertaking clause was inserted therein and for the further reason that the initial payment was not sufficient. He wanted it raised to seven thousand five hundred dollars. He admitted selling the property to Mr. Root, who made an initial payment of seven thousand five hundred dollars, selling the same before the expiration of the thirty-day option.

As above stated, this is an action for damages against two defendants, so it will be necessary to discuss separately the liability of each defendant.

As to the defendant Vahlkamp, the judgment in his behalf was proper. He plead the Statute of Frauds and now claims that it was a complete defense, but we cannot agree with him. It is true, that the statute requires a contract for the sale of real estate to be in writing and signed by the party to be charged therewith (R. S. 1919, sec. 2169), yet the statute does not provide for any particular form of writing. "Some memorandum or note thereof" are the words of the statute, and when this memorandum or note definitely describes the property and the terms of the sale, it is sufficient. [Kelly v. Thuey, 143 Mo. l. c. 435.] The paper signed by defendant Vahlkamp is definite and certain and it authorized the real estate company to sell the property for $22,500. This written authority does not state how much of the purchase price should be paid down, hence the presumption is that the defendant Vahlkamp intended, when he executed the paper, that the full amount should be paid in cash, especially as nothing was said about the deferred payments, the amount of each one, nor the security for such deferred payments.

As the offer made by plaintiff was for five thousand dollars cash and the balance in deferred payments, it cannot be said that the offer brought by the agent to defendant Vahlkamp was in accordance with the terms and authority given to the agent. Thereupon, defendant Vahlkamp changed the offer, requiring an initial payment of seven thousand five hundred dollars and refusing to consent to the sale of the property with the clause regarding the undertaking business therein. His evidence is to the effect that he never approved of the written offer or receipt for earnest money, and the two representatives of the real estate company testified that he never approved of the same. There is no evidence to support the allegation in plaintiff's petition that he did approve of it or that he did agree to sell the property to plaintiff. In other words, the minds of the parties did not meet. The plaintiff had the right to insist on the insertion of a clause in the contract regarding the undertaking business, and defendant Vahlkamp had the right to refuse to agree to such insertion; this too although the zoning ordinance of St. Louis was passed upon by this court in State ex rel. Penrose Investment Company v. McKelvey, 301 Mo. 1. As the finding of the jury was for the defendant Vahlkamp, clearly for the right party, it becomes our duty to affirm the judgment as to him, even though error may have occurred during the trial. [Cass County v. Bank, 157 Mo. l. c. 137; Trainer v. Mining Co., 243 Mo. l. c. 371; Baustian v. Young, 152 Mo. l. c. 325.]

As to the defendant real estate company, the case is different. If the officers of the real estate company represented to plaintiff that defendant Vahlkamp approved of the modification of the receipt and option and was willing to sell the property on the terms stated, when in fact he did not approve of such modification and was not willing to sell on such terms, plaintiff would have a cause of action against the real estate company. [Byars v. Doores, 20 Mo. 284; Heath v. Goslin, 80 Mo. l. c. 316-17; Lapsley v. McKinstry, 38 Mo. l. c. 247; Wright v. Baldwin, 51 Mo. l. c. 271; International Store Co. v. Barnes, 3 S. W. (2d) l. c. 1041; Story on Agency, secs. 281-2; 1 Mechem on Agency, sec. 1368; 2 Kent's Commentaries, p. 630.]

But the petition in this case is unfortunately worded. It alleges that "*defendants* agreed to sell and plaintiff agreed to buy at and for the price and sum of twenty thousand dollars a certain parcel of improved property . . . known as 3545 Lafayette Avenue, which sale also included screens, shades and lighting fixtures; that *defendants* then and there by *their* contract in writing agreed to convey on or before March 10, 1921, the aforesaid described property to plaintiff by *their* warranty deed." (Italics ours.) There was no agreement on the part of the real estate company to either sell or convey this property to plaintiff; it was only acting as agent for de-

fendant Vahlkamp in the agreement to sell said property. And the petition further alleges that "the defendants, in violation of their contract and in fraud of plaintiff's rights, entered into a contract on or about the 25th day of February, 1921, to convey the aforesaid described property to one Frank L. Root and Laura Root, his wife, and that defendants actually conveyed and transferred, in violation of plaintiff's rights and of their contract, the said property to the said Frank L. Root and Laura Root, his wife, and the defendants could not and cannot now convey the title to said premises to plaintiff." As above stated, the title to the property was in defendant Vahlkamp, and any conveyance of the property would have to be made by him, and not by him and his co-defendant. Besides, the receipt for earnest money, upon which plaintiff bases its cause of action, provides for an initial payment of five thousand dollars, and five deferred payments. It must be remembered that the evidence and all the evidence, shows that defendant Vahlkamp required that the initial payment be increased to seven thousand five hundred dollars and plaintiff agreed to this. Therefore, the terms of the original offer were modified to that extent; but there is no allegation of such modification in plaintiff's petition. LAMM, J., in speaking for this court, very appropriately said: "Proof and allegation must correspond and no recovery can be had on a new or a different cause of action than that chalked out in the written pleadings." [Mark v. Cooperage Co., 204 Mo. l. c. 262; Henry Co. v. Citizens Bank, 208 Mo. l. c. 225-6.] Our court has also said, the *probata* must correspond with the *allegata*. [Rutledge v. Railroad, 110 Mo. l. c. 318; Chitty v. Railroad, 148 Mo. l. c. 74.] If plaintiff sought to recover on the written authority, which was afterwards modified by defendant Vahlkamp, it should have amended its petition showing such modification, so that its pleading and proof should correspond and not contradict one another. [Lanitz v. King, 93 Mo. l. c. 519; McCormick v. O'Banion, 153 S. W. l. c. 270; Kilpatrick v. Wiley, 197 Mo. l. c. 162.] The trial court doubtless saw that the evidence offered by plaintiff did not sustain the allegations of its petition, and properly sustained the motion for a new trial filed by defendant real estate company, thereby giving plaintiff an opportunity to amend its petition if it so desired. The action of the trial court in granting a new trial rests largely in the discretion of that court; in this instance it was wisely exercised.

The judgment of the court in granting the motion for a new trial filed by the real estate company is affirmed. *Atwood, P. J.,* concurs; *Ragland* and *Gantt, JJ.,* concur in result.